176 Wis.2d 224 (1993)
500 N.W.2d 351
IN RE the PATERNITY OF C.L.L.:
R.D.P., Petitioner-Appellant,
v.
R.L.B., Respondent-Respondent.
No. 92-0082.
Court of Appeals of Wisconsin.
Submitted on briefs August 6, 1992.
Decided April 8, 1993.
*225 For the petitioner-appellant the cause was submitted on the briefs of James B. Noble and Richard David Phillips, pro se, of La Crosse.
For the respondent-respondent the cause was submitted on the brief of Robert W. Swain, Jr. of Herrling & Swain, S.C. of Appleton.
Before Eich, C.J., Dykman and Sundby, JJ.
DYKMAN, J.
We granted Richard P. leave to appeal from the dismissal of his petition to determine paternity and custody of Courtney L. The issue is whether the trial court erred in dismissing the petition on the basis that it had to give full faith and credit to a Kentucky divorce decree declaring Courtney to be a child of the marriage between Rebecca B. and Billy L.
We conclude that the full-faith-and-credit clause of article IV, section 1 of the United States Constitution does not bar Richard P. from pursuing his claim in a Wisconsin forum. Therefore, we reverse and remand the cause for further proceedings.

BACKGROUND
Rebecca B. and Billy L. were married in Kentucky on December 12, 1986. Rebecca left Kentucky in February 1987, and Billy filed for divorce in March 1987. While the action was pending, Rebecca lived in Naperville, Illinois, and Billy lived in Kentucky. Prior to the final decree, Courtney was born in Illinois on March 2, 1989. In the absence of a contested paternity action, the Kentucky court granting the divorce applied the *226 statutory presumption that Billy was Courtney's natural father.[1]
In November 1990, Richard P., Courtney's putative father, filed a petition in the La Crosse County Circuit Court to establish his paternity and to determine custody and placement. Rebecca moved to change venue from La Crosse to Winnebago County, where she now resides with Courtney. The trial court deferred the motion pending mediation of Courtney's physical placement. After attempts at mediation failed, Richard moved the court to order the parties to submit to blood tests. Rebecca moved to dismiss the paternity petition on the ground that the trial court was required to give full faith and credit to the Kentucky divorce decree which found Courtney to be Billy's child.
On November 20, 1991, the trial court entered an order granting the motion to dismiss and denying the motion for blood tests. At Richard's request, the order dismissing the petition was stayed for forty-five days to permit him to seek an order for blood tests from a Kentucky court. Richard filed this appeal on January 2, 1992, two days before the trial court's order became final. We treated Richard's notice of appeal as a petition for leave to appeal and granted it.

STANDARD OF REVIEW
[1]
The effect of the Kentucky divorce decree on a Wisconsin trial court's authority to consider this paternity action is a question of law. In re B.W.S., 131 Wis. 2d *227 301, 307, 388 N.W.2d 615, 618 (1986). Our review is de novo. Id.

FULL FAITH AND CREDIT
Rebecca maintains that because Richard failed to allege that he had no notice of the Kentucky divorce proceedings, his paternity action in Wisconsin is barred by the full-faith-and-credit clause of the United States Constitution. She relies on Hansen v. Haagensen, 178 N.W.2d 325 (Iowa 1970), cert. denied, 401 U.S. 912 (1971). We reject this argument.
Hansen is inapposite. In Hansen, the plaintiff attempted to collect the balance of a Minnesota money judgment in an Iowa court. The Iowa court refused to give effect to the judgment because the Minnesota court did not have personal jurisdiction over the defendant when it rendered the judgment.
We conclude that the full-faith-and-credit issue is more appropriately analyzed under B.W.S., 131 Wis. 2d at 301, 388 N.W.2d at 615. In B.W.S., the guardian ad litem filed an action in Wisconsin seeking a determination of paternity and an order that the putative father, W.G.N., provide support. W.G.N. argued that the action was barred by a settlement with B.W.S.'s mother which was approved by a Michigan court. Under the settlement, W.G.N. admitted paternity and agreed to place a lump sum of $3,000 in trust for B.W.S. to satisfy all claims against him for support and education.
In analyzing W.G.N.'s argument, the supreme court noted that a Wisconsin court only had to give such effect to the settlement as a Michigan court would render. Id. at 308, 314, 388 N.W.2d at 619, 621. Thus, if the settlement did not bar B.W.S.'s action for support in a Michigan court, it would not bar the action in a *228 Wisconsin court, either. Id. Because the lump sum did not adequately provide for B.W.S.'s support and education as required by Michigan's paternity statutes, the supreme court determined that a Michigan court would vacate the order based on the settlement. Id. at 312-14, 388 N.W.2d at 620-21. Accordingly, the court concluded that the action would not be barred in Michigan and permitted B.W.S. to proceed in the Wisconsin forum. Id. at 314, 388 N.W.2d at 621.
Applying the methodology of B.W.S., to the case before us, we must first determine whether a Kentucky court would permit a collateral attack on the divorce decree finding that Billy L. is Courtney's father. As noted above, Kentucky presumes the legitimacy of children born during marriage. However, the presumption is rebuttable and may be overcome by factual evidence. Bartlett v. Commonwealth ex rel. Calloway, 705 S.W.2d 470, 472 (Ky. 1986). In Bartlett, the Kentucky Supreme Court upheld a paternity judgment against the putative father despite the fact that the child was born during the mother's marriage to another man who, like Billy L., did not challenge paternity during the divorce proceedings.
The holding in Bartlett, coupled with statutory provisions that a putative father may commence a paternity action[2] within eighteen years of the child's birth,[3] leads us to conclude that Kentucky would allow Richard P. to collaterally attack the divorce decree. Therefore, in keeping with the principle of B.W.S. that we need not assign any greater credit to a final judgment than it would receive in the state in which it was *229 rendered, we hold that Richard is not barred from proceeding in Wisconsin  at least not to the stage where the trial court makes the determination that the proceeding would be in Courtney's best interest and orders blood tests to be performed. See sec. 767.458(1m), Stats.[4]
[2]
Accordingly, we reverse the trial court's order and remand the cause to permit Richard to go forward with his petition. In addition, pursuant to sec. 767.045, Stats., the trial court shall appoint a guardian ad litem to represent Courtney in the proceedings upon remand.
By the Court.Order reversed and cause remanded with directions.
NOTES
[1] Under KY. REV. STAT. ANN. § 406.011 (Michie/Bobbs-Merrill 1984), "[a] child born during lawful wedlock, or within ten (10) months thereafter, is presumed to be the child of the husband and wife."
[2] See KY. REV. STAT. ANN. § 406.021(1) (Michie/Bobbs-Merrill 1984 & Supp. 1992).
[3] See KY. REV. STAT. ANN. § 406.031(1) (Michie/Bobbs-Merrill 1984 & Supp. 1992).
[4] Richard also argues that his action is not barred in Wisconsin by the doctrines of res judicata, waiver, or collateral or equitable estoppel. However, Rebecca has not contended that these doctrines apply before either the trial court or this court. Therefore, we do not address these arguments.